VIVIAN HOLMES, plaintiff in error, vs. JAMES R. GEORGE and MATTHEW M. SCOTT, defendants in error.

A denial of the allegations of a bill, if the denial be founded merely on information and belief, will not justify the dissolution of the injunction, especially when the case is one in which, irremediable loss might result from the dissolution.

In Equity from Troup County.    Decision by Judge BULL, at May Term, 1857.

On the 15th day of February, 1856, James R. George for the use of Matthew M. Scott, brought his action of debt against Vivian Holmes, returnable to Troup Superior Court, May Term, 1856, founded on a promissory note made by said Vivian Holmes, on the 12th December, 1851, whereby he promised on the 25th of December, 1852, to pay to James R. George, three hundred and twenty dollars for value received.

On the 14th of April, 1856, said Holmes filed his bill in equity, praying an injunction against said action at law. The bill states that in the month of December, 1851, Holmes and George entered into partnership in the county of Pike, in a Steam Mill.    That the capital stock amounted to $5,000, of which Holmes paid his half.    There was no written agreement, but it was agreed by parol that Holmes and George would run the mill and use the partnership property together on equal terms, sharing equally the profits and losses. George at his own request, kept the books and conducted the business.    He agreed to do this without pay.    Holmes dealt with him in great trust, and left the business entirely to his management. .. Holmes does not know positively what it yielded as a net profit only by the declarations of George and from information obtained from men who were engaged there. The mill was located near the Plank Road, 16 miles from Griffin then a rapidly growing city, surrounded by a large quantity of excellent timber; saw mill was capable of saw-

ing 4,000 feet per day, and grist mill of grinding 50 bushels of corn per day, under proper management. There was a good run of custom to the corn mill, sufficient to keep it running; ready sale existing for it and lumber. Corn was worth $1 per bushel; lumber was worth at least $1 per 100 feet, and three-quarters of what was sawed, $1 25 was below market price. Said George told Holmes the mill cleared net $40 per day, led him to believe so; and that it yielded that amount per day during the time they worked it. Holmes alleges from this and other information, that it made $40 per day, or should have done so, inasmuch as under proper and judicious management, it was capable of that result, and said George was liable by his contract and agreement to make it yield that much.

The partnership lasted and continued from 12th December 1851 to 20th May 1852; five months and a few days, and the net profits for which said James R. George was liable, after deducting and making allowance for casualties, bad weather, etc. was $3,000.

George managed the partnership affairs carelessly, let the mill get greatly out of repair, and squandered and sequestered the partnership assets, &c. scattering tools, appropriating to himself the hogs, sheep, &c. and permitting the stock to stray off, and much valuable machinery to be broken up, thereby under his agreement, rendering himself liable to the partnership $3,000. The exact amounts are not given above. Owing to the peculiar trust and confidence of Holmes in George, he does not know, but the facts are in the knowledge of George, and Holmes has no means of knowing, unless by resorting to the conscience of George.

George is utterly and hopelessly insolvent. He has gone to parts unknown, even after diligent enquiry. He has no property in Georgia.

Holmes further states, that he has already been compelled to pay and has paid large sums of the debts of the partnership, amounting in all to $500, (for which an exhibit is pre-

sented,) and for which James R. George is liable to said Holmes, as they were for the contracts of George for himself, to which he signed the firm name, and which were paid by Holmes before the fact was discovered.

Holmes then refers to the suit, and says it is founded on a note payable to James R. George alone, and not transferable, and which said partnership note was subject by said partnership agreement to be settled on the final account to be taken between said Holmes and James R. George, and which said note was given, in pursuance to said partnership agreement.

George is indebted to Holmes on a final settlement of the partnership, a sum greatly exceeding the amount of the promissory note, and owing to his insolvency, and his having left the State, if he is permitted to collect the money, it will work great and irreparable injury to Holmes.

Holmes has often demanded a settlement, and proposes to pay any balance that may appear against him.

Alleges combination with Matthew M. Scott and others.

At May Term, 1856, complainant took an order to perfect service on George by publication. This he did.

At November Term, 1856, he took the usual rule. At May Term, 1857, George being in default and having filed no answer, he took an order granting leave to him to file a statement of such facts as he believed George knew and would swear to, and taking the bill *pro confesso* against him.

On the 8th December, 1856, Matthew M. Scott filed his answer. Admitting the partnership; that the note was not transferable; that Scott is out of the jurisdiction, and has no property in Georgia:

Denying that the mill made $40 per day on information and belief; that George managed it alone, or that George owes Holmes a cent on a settlement.

Denies, that George is insolvent, but declares he is solvent and lives in Texas.

Denies combination with George; says he bought the note before the partnership was dissolved; that after the purchase, Holmes promised to pay him the note provided he would grant him indulgence; that he granted the indulgence.

Denies, that the note was subject to be settled on the final account between the partners.

Denies, that Holmes ever made any tender or offer to George.

Denies any proposition to settle ever having been made by Holmes.

Upon the coming in of the answer, the defendant, Matthew M. Scott, moved to dissolve the injunction.

The Court sustained the motion, and dissolved the injunction, and counsel for complainant excepted.

B. H. BIGHAM, for plaintiff in error.

B. H. HILL, contra.

By the Court.—BENNING, J. delivering the opinion.

The bill states, that the partnership lasted over five months, and that the net profits of the partnership business, were $40 per day. The answer does not deny these statements, except on information and belief; and a denial of the allegations of a bill, if the denial be merely on information and belief, will not justify the dissolution of the injunction, especially if the case be one in which, such dissolution might work irremediable mischief. This is such a case, for Holmes has left the State.

These statements being taken as true, there is equity in the bill.

It was argued for the defendant, that the matters of set-off pleaded in the bill, came into existence after the note was transferred by George to Scott, and that, therefore, they were not good against Scott.

But, first, this argument rests upon a statement in the answer, not responsive to any thing in the bill; and secondly, the note is without words of negotiability; is it not one, therefore, in respect to which, Scott cannot have a better position than George's was.

We think that the Court erred in dissolving the injunction.

                                        Judgment reversed.